J. W. COWART, sheriff, plaintiff in error, *vs.* T. J. DUNBAR & COMPANY *et al.*, defendants in error.

When a rule issues against a sheriff requiring him to show cause why he should not be attached for contempt for failure to levy certain executions on property shown to have been in the possession of the defendant, the measure of his liability is the injury thereby sustained by the plaintiff.  He may therefore show that the property in the possession of the defendant belonged to some one else.

Sheriff.    Attachment.    Damages.    Before Judge HERSCHEL V. JOHNSON.    Emanuel Superior Court.    April Term, 1875.

Reported in the decision.

CHARLES B. KELLY; JOSEPHUS CAMP, by Z. D. HARRISON, for plaintiff in error.

JOHN M. STUBBS; H. D. D. TWIGGS, for defendants.

WARNER, Chief Justice.

This was a rule against the sheriff of Emanuel county, and the record contains the following statement of facts:

Defendants in error obtained judgments against John L. McLemore at the November term, 1871, of Emanuel superior court, on which judgments *fi. fas.* were issued November 13th,

1871. At the April term, 1874, of said court, a rule was issued against the sheriff because of his failure to levy said *fi. fas.* The sheriff answered the rule, saying he had made search but could find no property. His answer was traversed, and on the trial of the issue thus formed plaintiffs in *fi. fa.* introduced in evidence the said *fi. fas.*, with entries of *nulla bona* thereon. They also introduced the following oral testimony:

JOHN M. STUBBS, attorney for plaintiff in *fi. fa.*, swore that at the April term, 1873, deputy sheriff Cannady told him that defendant in *fi. fa.* was in possession of a horse and buggy, but that he did not know who owned it. Witness told him to levy on them, to which Cannady replied he would if he (witness) would point out the property. Witness at same time also instructed Cannady to ascertain if defendant in *fi. fa.* had any interest in a certain store-house and lot in the town of Swainsboro, and that if he found such interest, to levy on the same; that at the April term, 1874, witness asked Cannady if he had made the money on these *fi. fas.*; that Cannady run out his tongue with an expression of surprise and said he had forgotten it; witness then told him he would have to rule him, to which Cannady replied: "Well, go ahead; you have not paid me the cost in these cases anyhow."

S. A. PUGHSLEY swore that he saw defendant in *fi. fa.* in possession of property in 1869, 1870 and 1871; he was in possession of, and exercised acts of ownership over, a horse and buggy in 1872 and the early part of 1873; his possession of horse and buggy and claim of ownership was open and notorious; horse and buggy were worth $325 00 or $350 00; after 1871 defendant in *fi. fa.* was in possession of store-house and lot in Swainsboro; the house was built by Sherod in 1872; defendant's possession thereof was in 1872 and part of 1873; witness, at the time this rule was brought, and still is, in employment of plaintiff in *fi. fa.*

JOHN H. SHEROD swore that he built the house on the Moore lot, and finished the same in June, 1872, and then de-

livered possession thereof to defendant in *fi. fa.*, who retained possession of it about one year; store-house and lot worth $1,000 00; the dwelling house now occupied by defendant in *fi. fa.* is worth $1,500 00, and has been in his possession since its completion last year; saw defendant in *fi. fa.* in possession of horse and buggy in 1872 and part of 1873; said horse and buggy were worth $350 00; the possession of all this property was open and public; the sheriff's office, in the town of Swainsboro, is within one hundred yards of said store-house.

H. M. SUTTON swore that he built the dwelling house occupied by defendant in *fi. fa.*; it is worth $2,500 00; completed it in 1874; defendant in *fi. fa.* was in possession when the house was commenced, and has since then retained possession; the store-house is worth $450 00; store-house and lot worth $1,000 00 or $1,200 00.

Respondent introduced the following testimony:

WILLIAM CANNADY, deputy sheriff, swore as follows: Had no recollection of conversations testified to by Colonel Stubbs; don't remember to have told him that I had forgotten to levy *fi. fas.*; don't remember that he said he would rule me, and that I replied, "Go ahead; you havn't paid me the cost on these cases anyhow." I have not seen defendant in *fi. fa.* in possession of any property since I have been in possession of these *fi. fas.* I and Cowart, the sheriff, went into office in February or March, 1873.

*Cross-examined.*—Am quite positive I never had any such conversation with Colonel Stubbs, as stated by him. Don't recollect that I swore on the last trial of this case that I would not swear these conversations had not taken place. [Here counsel for plaintiffs in *fi. fa.* read from witness's recorded testimony on the former trial, which was an approved brief, agreed upon by counsel on former motion for new trial, as follows: Witness would not say that he did not tell Stubbs that he had forgotten to levy and that Stubbs had not paid costs of said suit.] Counsel asked if this was not his testimony on former trial. Witness replied, "If it is so recorded,

I must have so testified, but I do not remember it." Had seen defendant in *fi. fa.*, and his brother Lawson McLemore, selling goods in two or three stores about town, but don't know which was in possession of the houses.

MATTHEW OVERSTREET, sworn: Went into possession of store-house referred to in January, 1873; Lawson McLemore was in possession when I went it; defendant in *fi. fa.* is my son-in-law, and was not in possession of house at that time.

CHESLEY FAIRCLOTH, sworn: I went into possession of store-house in fall of 1872; Lawson McLemore put me in possession; he was in possession before I went in.

Defendant in *fi. fa.*, sworn: Was never in possession of store-house; kept post-office in portion of store-house. Since I have been post-master I have kept post-office in several stores belonging to others; others kept post-office for me.

Defendant offered to prove by the witness, H. W. Sutton, called by plaintiffs, that the house occupied by John L. McLemore, defendant in *fi. fa.*, as a dwelling house, was built by witness for Ira T. McLemore, father of defendant in *fi. fa.*, and that the defendant in *fi. fa.* was in possession merely as a tenant of his father, Ira T. McLemore, who was then, and has been ever since, the owner of the premises.

To this evidence the plaintiffs objected, the court sustained the objection, and refused to allow the evidence to go before the jury. To which ruling and decision of the court the defendant excepted.

Defendant offered to prove by the witness, John L. McLemore, that he, the defendant in *fi. fas.*, was not the owner of the horse and buggy testified to by plaintiffs' witnesses, and that he never exercised acts of ownership over said property, nor had the same in possession, except when he had borrowed them for a short time, and that L. A. McLemore, his brother, was the owner of said property and in possession of the same.

To this evidence the plaintiffs objected, and the court sustained the objection, and refused to allow the evidence to go before the jury. To which ruling and decision of the court, in rejecting said evidence, defendant excepted.

Defendant then offered to rebut the evidence of John She-rod, introduced by the plaintiffs, as to the building, possession and ownership of the store-house, by the witness, John L. McLemore, by whom defendant offered to prove that the witness, who is the defendant in *fi. fa.*, did not contract for the building of said house, and that he was never in possession of the same, but that witness' brother, L. A. McLemore, had the house built, and is the owner of the same, and had been in possession of the house ever since its construction.

To this evidence the plaintiffs objected, and the court sustained the objection, and refused to allow the evidence to go before the jury. To which ruling and decision of the court, in rejecting said evidence, the defendants excepted.

The defendant having offered no other evidence, the case was submitted to the jury. The judge charged the jury as follows:

" *Gentlemen of the jury*—Two *fi. fas.*, the one in favor of J. L. Falk & Company, and the other in favor of T. J. Dunbar & Company, *vs.* John L. McLemore, were placed in the hands of the sheriff for collection early in the year 1873. Having failed to make the money thereon, a rule *nisi* was issued against him at the April term, 1874, to show cause why, etc. In response to that rule the sheriff answered that he had searched and could find no property whereon to levy said *fi. fas.* The plaintiffs in *fi. fa.* traversed said answer, and alleged that when called on by plaintiffs' counsel and asked why he had not collected the *fi. fas.*, the sheriff answered " that he had forgotten it," and added, " you have not paid the cost on these *fi. fas.*, anyhow." The issue thus made up forms the subject matter of your present deliberation.

" The sheriff having answered the rule officially, under oath, and in response to plaintiffs' call, the presumption of law is that his answer is true, and that presumption is conclusive unless traversed and rebutted by proof. Hence the traverse in this case. On the one hand, the sheriff says he searched and could find no property to levy said *fi. fas.* On the other hand, the plaintiffs say his answer is not true, but so far from

making any " search " for property he confessed to the plaintiffs' counsel that he " forgot it," and urged as an additional excuse that the plaintiffs counsel had not " paid the cost on said *fi. fas.*, anyhow." Now, gentlemen, if the sheriff's answer to this rule *nisi* be true, then he has done his duty—the rule should be discharged. But the plaintiffs in *fi. fa.*, say it is not true. Their allegation is (I repeat) that the sheriff said he forgot it, and that the cost on the *fi. fas.* had not been paid anyhow. Now, if the allegation of the traverse be true, then the sheriff's answer is not true. If he forgot the matter, it is certain that he did not search for the property. Both cannot be true. If you find from the evidence that he did search and could find no property, etc., he is not liable under this rule. But if you find that he did not, that he said he " forgot," and failed to levy because he " forgot it," or because " cost on said *fi. fas.* had not been paid," he is liable.

"The defendant's counsel requests me to charge you that if the sheriff's answer is taken as true, he is not liable. I do so charge you, as I have once or twice already stated. The defendant's counsel requests me to charge, that if you find from the evidence that the defendant in *fi. fa.* was not in possession of property subsequently to the sheriff's coming into office, he is not liable. I so charge you.

" This brings me, gentlemen, to the real question for your consideration, and that is, was the defendant in possession of property since the sheriff came into office? This is purely a question of fact for you to determine. You have heard the evidence concerning the alleged possession by the defendant in *fi. fa.* of a horse and buggy, a store house and lot, and a dwelling house and lot, in this town, worth, as the plaintiff alleges, from $2,500 00 to $3,000 00—enough, as they insist, to have satified their *fi. fas.* The matter of evidence in this cause falls exclusively within your province. I intimate no opinion—would not do so if it were my right—as to what has or has not been proven on this question of possession, or indeed upon any question involved in this case. You will inquire, therefore, what has been proved in reference to it. If

you find, from the evidence, that the defendant was in possession of that or any other property, the sheriff was bound to make a faithful effort to levy and bring it to sale.

" (Here I read one of the *fi. fas.*, and called the attention of the jury to the language of command, viz : ' We command you,' etc.) From this you see, gentlemen, that as a mere executive officer, he was bound by judicial command to levy. In addition to this his official oath binds him faithfully to execute all writs, warrants, precepts, and processes, directed to him, etc. From this you will perceive, also, gentlemen, that it is not necessary for the plaintiff or his counsel to give special order to levy; that order is embodied in the writ of *fieri facias*, emanating from a source superior to either plaintiff or his counsel, nor is it necessary for plaintiff or his counsel to point out property in the possession of the defendant, for the writ commands to levy it, nor can the sheriff demand the payment of cost in advance, and even if he could, he should make demand before he can act upon its non-payment as an excuse for failing to levy. Nor can the sheriff excuse his failure to levy by saying ' he forgot it ;' nor can he excuse himself by saying that the property in the possession of the defendant is the property of somebody else, and not subject to the *fi. fas.* in his hands.

" The law does not permit him to set up a forum in his bosom to decide the title to property. That is a question on which the plaintiff in *fi. fa.* has a right to be heard. The sheriff cannot place himself in the position of, and take sides with, the defendant in *fi. fa.* He must make a faithful effort to bring to sale property in possession of the defendant. Such possession is *prima facie* evidence of title in him, and the sheriff must act upon that presumption. He must levy. If he is met and stopped by legal interposition, such as a claim interposed, or an injunction by a third party, he will be free from blame, free from liability. I repeat, therefore, that if you find from the evidence that the defendant, McLemore, was in possession of property at any time since the sheriff came into office, and he failed or refused to levy and try to

bring it to sale, he cannot be exonerated by setting up any of the excuses just mentioned; he is liable to the extent of the value of the property so in possession. You will, therefore, if you find such possession of property in the defendant, ascertain its value from the evidence before you. In considering evidence it is your duty, if possible, to reconcile conflicting statements and contradictory witnesses, without imputing perjury to any.

"When one witness testifies positively one way, and another equally credible testifies as positively the other way, it is like two equal forces acting in opposite directions. Nothing in relation to matter thus testified of is proven. Affirmative testimony outweighs, in law, negative testimony; that is to say, one witness who swears affirmatively to a fact, outweighs the testimony of two or more who only swear negatively.

"These, gentlemen, are the principles of law applicable to this case. It is one of importance to the parties litigant. Let me admonish you to free your minds from all bias or partiality. Know nothing, gentlemen, but the case as it is exhibited to you by the evidence."

To which charge respondent excepted.

The jury retired, and returned with a verdict in favor of defendant. Plaintiffs in *fi. fa.* made a motion for a new trial on the following grounds, to-wit:

1st. Because the jury found contrary to the law and the evidence.

2d. Because the jury found contrary to law.

3d. Because the verdict is contrary to evidence and the charge of the court.

4th. Because the verdict is contrary to the charge of the court.

5th. Because the verdict is strongly and decidedly against the weight of evidence and the charge of the court.

The court granted a new trial; to which judgment granting a new trial the respondent excepted.

There was no error in the charge of the court in view of the evidence before the jury, nor in granting a new trial on

the ground that the verdict was contrary to that charge, and that would dispose of the case; but as there is to be a new trial, and the counsel for the defendant in error have expressed a desire that we should decide the question as to the admissibility of the evidence offered to be proved by the witnesses H. W. Sutton and John L. McLemore, as set forth in the record, we will proceed to do so.   The 3949th section of the Code declares that the sheriffs of this state shall be liable to an action on the case, or an attachment for contempt of court, at the option of the party, whenever it appears that such sheriffs have *injured* such party, either by a false return, or by neglecting to arrest a defendant, or to levy on the property of the defendant, or to pay over to the plaintiff or his attorney any moneys collected by such sheriffs by virtue of any *fi. fa.* or other legal process, or to make a proper return of any writ, execution or other process put into the hands of such sheriff.   Thus it will be perceived that when a plaintiff in *fi. fa.* has been injured by the failure of the sheriff to levy on the property of *the defendant,* he has his option of one of two remedies against the sheriff, either by an action on the case or by a rule calling upon him to show cause why he should not be attached for contempt of court.   When the plaintiff elects to pursue the latter remedy against the sheriff, the measure of the sheriff's liability to him is the value or amount of the injury which he has sustained by the failure of the sheriff to levy his *fi. fa.* on the property of the defendant; that is the amount for which the plaintiff is entitled to a judgment against the sheriff in that proceeding so far as the plaintiff himself is concerned.   Why should the plaintiff, when he elects to pursue his remedy under the statute by an attachment for contempt against the sheriff, be entitled to a judgment for his benefit for any greater amount than the actual injury which he has sustained by the failure of the sheriff to levy his *fi. fa.* on the defendant's property?   Why should not the sheriff be allowed, as well as the plaintiff in that proceeding, to show what was the *actual injury* sustained by the plaintiff?   According to the rulings of this court in

*Dobbs vs. The Justices, etc.*, 17 *Georgia Reports*, 624, and *Carroll vs. Phillips*, 18 *Georgia Reports*, 469, this is not an open question here. The sheriff offered to prove that the property in the defendant's possession was not his property, and therefore that the plaintiffs had not been injured by his failure to levy on it. In our judgment, this evidence was competent and should have been received. It is unquestionably the duty of the sheriff to levy on property found in the defendant's possession, as a general rule, because the possession of property is *prima facie* evidence of title, and when a sheriff is ruled for not levying a *fi. fa.* on property in the defendant's possession, the burden of proof is on him to show that it was not the property of the defendant. The writ of *fieri facias* commands the sheriff to levy on the property of the defendant, but it does not necessarily follow that because the defendant has property in his possession that it is *his property;* as, for instance, the defendant might hire a horse and buggy from a livery stable to use for a few days, and have the same in his possession, and the sheriff fail to levy on it, should the sheriff, when ruled by the plaintiff in *fi. fa.* for failing to levy it on the horse and buggy, be prevented from showing that it was not the defendant's property, and therefore that the plaintiff had not been injured by his failure to make the levy? We think not. It was insisted on the argument for the plaintiffs in *fi. fa.* that it was the duty of the sheriff to levy it on any property found in the defendant's possession, and that he could only protect himself from liability to the plaintiff by showing that a claim had been interposed to the property by some third person; that undoubtedly would have excused the sheriff from bringing the property to sale if he had levied on it, but the foundation of the plaintiffs' proceeding against the sheriff is his failure to levy on the property in the defendant's possession, whereby he has been injured. Whether the plaintiffs have been injured by the failure of the sheriff to levy their *fi. fas.*, on the property in the defendant's possession, depends on the fact whether it was the defendant's property, or the property of some other person. The *prima*

*facie* legal presumption is that it was the defendant's property, and that the plaintiffs were injured by the failure of the sheriff to levy on it, and the burden of proof was on the sheriff to rebut that *prima facie* legal presumption, by clear and satisfactory evidence (as much so as if a claim to the property had been interposed by a third person,) that the property in the defendant's possession was not his property, and was not liable to be seized and sold as such by virtue of the plaintiffs' *fi. fas.* If the property in the defendant's possession was not his property and was not subject to the plaintiffs' *fi. fas.*, then the plaintiffs have not been injured in contemplation of the statute, by the failure of the sheriff to levy their *fi. fas.* thereon, and should not be held liable to the plaintiffs for the value of that property, otherwise he would be liable to the plaintiffs for its value.

Let the judgment of the court below granting the new trial be affirmed.