## SNELL *vs.* MAYO, sheriff.

The sheriff having served a declaration and process in "bail trover" by leaving a copy at the defendant's most notorious place of abode, without more, making no return as to the property or as to any arrest of the defendant, he is liable for the eventual condemnation money; and, on a rule against him brought after judgment in the trover action, he cannot reduce his liability by controverting the

plaintiff's title, nor by adducing evidence that the real value of the property was less than the amount of the recovery.

Sheriffs. Bail. Damages. Before Judge JOHNSON. Washington Superior Court. September Term, 1878.

Snell brought trover, with bail process attached, against Jackson. Mayo, the sheriff, served the defendant by leaving a copy at his most notorious place of abode. He made no return as to the property sued for, or as to any arrest of the defendant. Subsequently the plaintiff recovered a verdict and judgment against the defendant for $40.00. Execution issued and a return of *nulla bona* was made. The plaintiff moved a rule against the sheriff for his failure to seize the property sued for, to arrest the defendant, or to take the bond required by statute. The sheriff answered, first, that the property was not worth the amount of the judgment; secondly, that it did not belong to the plaintiff, but to one Charles Smith.

Plaintiff moved to strike this answer. The motion was overruled and she excepted.

Upon the trial of a traverse filed thereto, the court admitted testimony in support of both branches of the answer, over the objection of the plaintiff. To this she also excepted.

The court charged that if the property, the subject matter of the original trover suit, was not worth as much as the jury found in that suit, the sheriff was only liable for its real value; and if it was not the property of the defendant in that suit, the sheriff was not liable at all.

To this charge plaintiff excepted.

The jury found against the rule. The plaintiff moved for a new trial upon each of the grounds of exception above stated. The motion was overruled, and she assigned error accordingly.

EVANS & HINES, for plaintiff in error, cited Code, §§3949, 3418–3420; 56 *Ga.*, 417; 43 *Ib.*, 250; 25 *Ib.*, 200.

No appearance for defendant.

BLECKLEY, Justice.

An officer who, on mesne process, fails without good excuse to render services legally incumbent upon him, must respond to the plaintiff in damages for whatever amount the services if faithfully performed would have been worth in the proceeding in which they were due. In "bail trover" the sheriff is bound, either to seize the property sued for, and deliver it to the plaintiff on the terms prescribed, or to arrest the defendant and imprison him until the property is produced or a bond is given for its forthcoming; which bond renders the surety thereon liable for the eventual condemnation money as soon as the plaintiff recovers in his action. Code, §§3418-20. The case of *Snell vs. Jackson* was "bail trover," and there was neither seizure of the property nor arrest of the defendant; nothing was done by the sheriff except to effect service as in an ordinary suit. The eventual condemnation money would seem the proper measure of the sheriff's liability; and this measure ought to apply equally to a rule against him and to an action on the case. When judgment for a specific sum was recovered in the trover suit, the eventual condemnation money was fixed, and the sheriff, as he had failed to seize the property, should have had the defendant in jail, or if not, should have had in court a bond with security to enable the plaintiff to enter his judgment jointly against the defendant and the security, and to have execution against both without further proceeding. Code, §3419. By electing not to perform the services to which the plaintiff was entitled, the sheriff took upon himself the risk of making good the full fruits of the action. He cannot be heard to say that the action terminated in an improper verdict, unless he can show fraud or collusion. In respect to that very action the sheriff undertook to aid the plaintiff. Each had his own part in it; the plaintiff to prosecute it to judgment and the sheriff to serve the process according to law. The very purpose of the suit was to establish the plaintiff's title to the property,

and ascertain his damages, and in the end to collect if the property should not be delivered up. Shall the time and expense of the litigation in that suit all go for naught? Must the plaintiff enter into the same questions with the sheriff which he has already litigated with the defendant, his original adversary, and prove title and value over again? As to the amount, the judgment was a finality (27 *Ga.*, 265): and the security which the sheriff might have obtained if he had performed his duty would have been liable for that sum immediately, absolutely and unconditionally. In this respect the case is unlike that of an ordinary bail case, in which the sheriff has been permitted to mitigate by showing the insolvency of the debtor, as in 6 *Ga.*, 244. It is likewise totally different from those cases, as in 56 *Ga.*, 417, where the sheriff, as an excuse for not levying upon specific property, by virtue of a general execution, has been allowed to show that the title to the property was not in the defendant in execution! The difference from these latter cases is twofold :—First, the title disputed here by the sheriff is that of the *plaintiff*, not that of the defendant in the process; and, secondly, the title has been adjudged. Where there is a direct judgment as to the specific property, it is not certain that the sheriff can raise the question of even the defendant's title. See 13 *Ga.*, 389. A sheriff contracts with the public that he will perform his duty according to law. This contract is made for the benefit of suitors, and every suitor has a right to hold the sheriff to its terms. These terms, applied to the process of " bail trover," are that the sheriff will seize the property, imprison the defendant, or obtain from him a bond which will secure the eventual condemnation money. Suppose the sheriff had directly covenanted with the plaintiff to do one of these things in the given case, and were sued upon his covenant, the breach assigned being that he had failed in them all, would he not be bound by the judgment in the prior suit, if it was fairly and lawfully obtained? What right would he have to question the amount of the recovery, or the plaintiff's title to

the cause of action? If he had neither seized the property nor arrested the defendant, according to his covenant, what would remain for him but to respond to the amount of the recovery, seeing that he had neglected to use the appropriate means to procure security for the same?

The answer of the sheriff as to title and value should have been stricken, and no evidence going to these points admitted. It was a wide error in the court to charge the jury that if the title to the property was not in the *defendant* in the trover case, the plaintiff could not hold the sheriff for anything.

Doubtless the court meant plaintiff instead of defendant; but what he meant, though not so glaringly erroneous as what he said, was still erroneous.

It may be that some of the cases cited in Sedgwick on the Measure of Damages, 512, *et seq.*, if followed out in their principle, would conduct to a different result from that at which we have arrived; but if so, we think they should not be accepted as precedents in a case like the present.

Judgment reversed.